

U.S. Department of Justice

*Leah B. Foley*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

April 7, 2025

David G. Lazarus
Foley Hoag
155 Seaport Boulevard
Boston, MA 02210

      Re:    United States v. OHM Pharmacy Services, Inc.

Dear Dave:

The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, OHM Pharmacy Services, Inc. ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C):

1. Change of Plea

At the earliest practicable date Defendant will plead guilty to Count One of the Information, charging it with healthcare fraud in violation of 18 U.S.C. § 1347. Defendant admits that Defendant committed the crime specified in this count and is in fact guilty.

Defendant agrees to venue of the case in the District of Massachusetts. Defendant knowingly waives any applicable statute of limitations and any legal or procedural defects in the Information.

Defendant agrees to the accuracy of the attached statement of facts.

2. Penalties

Defendant faces the following maximum penalties on Count One of the Information:

      a.  A fine of $500,000 or twice the gross gain/loss, whichever is greater. *See* 18 U.S.C. § 3571(c), (d).

  b. A term of probation of not less than one year and not more than five years. *See* 18 U.S.C. § 3561(c)(1).

  c. A mandatory special assessment of $400. *See* 18 U.S.C. § 3013(a)(2)(B).

  d. Restitution to any victims of the offense if authorized by law; and

  e. Forfeiture to extent charged in the Information.

3. <u>Rule 11(c)(1)(C) Plea</u>

In accordance with Rule 11(c)(1)(C), if the Court accepts this Plea Agreement, the Court must include the agreed disposition in the judgment. If the Court rejects any part of this Plea Agreement, the U.S. Attorney may void the agreement and/or Defendant may withdraw from it. Defendant may not withdraw Defendant's plea for any other reason.

Should the U.S. Attorney void the agreement and/or Defendant moves to withdraw Defendant's guilty plea, Defendant agrees to waive any defenses based upon statute of limitations, the constitutional protection against pre-indictment delay, and the Speedy Trial Act for all charges that could have been brought as of the date of this Plea Agreement.

Defendant may seek sentencing by the Court immediately following the Rule 11 plea hearing. The United States does not object to the Court proceeding to sentence Defendant immediately following the Rule 11 plea hearing or in the absence of a Presentence Report in this case. Defendant understands that the decision whether to proceed immediately with the sentencing proceeding following the plea hearing, and to do so without a Presentence Report, is exclusively that of the Court.

4. <u>Sentencing Guidelines</u>

The parties agree jointly to take the following positions at sentencing under the United States Sentencing Guidelines ("USSG" or "Guidelines"):

  a. The base fine is $82,000, because this is the reasonably estimated pecuniary gain to the Defendant from the offenses. *See* USSG § 8C2.4(a)(2).

  b. Under USSG § 8C2.5(a), the culpability score is 4, determined as follows:

   1. Defendant's base culpability score is 5, in accordance with USSG § 8C2.5(a); and

   2. In accordance with USSG § 8C2.5(g)(2), Defendant's culpability score is reduced by 1 because Defendant demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct.

    c. Under USSG § 8C2.6, the appropriate multiplier range associated with a culpability score of four is 0.8 to 1.6;

    d. Thus, under USSG § 8C2.7, the Guidelines fine range is $65,600 to $131,200; and

    e. Disgorgement under USSG § 8C2.9 is not necessary.

Defendant understands that the Court is not required to follow this calculation. Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility, and may be released from the parties' agreed-upon disposition in Paragraph 5 if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

5. <u>Agreed Disposition</u>

The parties agree on the following sentence:

    a) a one-year term of probation;

    b) a mandatory special assessment of $400, which Defendant must pay to the Clerk of the Court by the date of sentencing; and

    c) restitution of $82,000.

In light of the commitment of the Defendant's parent company and corporate affiliates concerning resolution of the government's related False Claims Act allegations, the parties agree that no fine shall be imposed in this case and that forfeiture shall be satisfied the parent company's and affiliates' payment pursuant to the Civil Settlement Agreement.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

6. <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct

appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

    a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

    b) Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

The U.S. Attorney agrees not to appeal the imposition of the sentence agreed to by the parties in paragraph 5.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

    7.    <u>Forfeiture</u>

The parties agree that forfeiture is satisfied by the terms of the civil settlement agreement between the United States and the Defendant's parent company and corporate affiliates.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

8.    Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

9.    Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

10. <u>Who is Bound by Plea Agreement</u>

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

11. <u>Modifications to Plea Agreement</u>

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

*   *   *

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Abraham R. George.

Sincerely,

LEAH B. FOLEY
United States Attorney

By: _____
KELLY BEGG LAWRENCE
Chief, Health Care Fraud Unit
MACKENZIE QUEENIN
Deputy Chief, Health Care Fraud Unit

_____
ABRAHAM R. GEORGE
LAUREN GRABER
Assistant U.S. Attorney

### Acknowledgement on behalf of OHM Pharmacy Services, Inc.

I, Padmaja Patel the duly authorized representative of OHM Pharmacy Services, Inc. ("Auburndale"), hereby expressly acknowledge the following: (1) that I have read this entire Agreement as well as the other documents filed herewith in conjunction with this Agreement, including the Information and Statement of Facts; (2) that Auburndale has had an opportunity to discuss this Agreement fully and freely with its counsel; (3) that Auburndale fully and completely understands each and every one of the terms of this Agreement; (4) that Auburndale is fully satisfied with the advice and representation provided to it by its counsel; (5) that I am authorized on behalf of Auburndale to enter into this Agreement and to take all such actions as may be necessary to effectual this Agreement; and (6) that Auburndale has signed this Agreement knowingly and voluntarily.

Date: 04/08/2025                                 P.A.PATEL

### Acknowledgement by Counsel of OHM Pharmacy Services, Inc.

I, David G. Lazarus the attorney representing OHM Pharmacy Services, Inc., hereby expressly acknowledge the following: (1) that I have reviewed and discussed this Agreement with my client; (2) that I have explained fully each one of the terms of the Agreement to my client; (3) that I have answered fully each and every question put to me by my client regarding the Agreement; and (4) that I believe my client fully and completely understands all of the Agreement's terms.

Date: April 8, 2024

DAVID G. LAZARUS
Foley Hoag
Attorney for Defendant OHM Pharmacy Services, Inc.

Agreed-Upon Statement of Facts

The defendant, OHM PHARMACY SERVICES, INC. ("OHM"), operated a specialty pharmacy in Auburndale, Florida. OHM's business focused on dispensing high-cost treatments and dermatological products that were less commonly available at traditional retail pharmacies.

One of the products OHM dispensed was Evzio, a prescription naloxone hydrochloride injection used to treat a person known or suspected to have had an opioid overdose. Evzio delivered a single dose of the drug naloxone via a voice-guided, hand-held auto-injector. OHM dispensed Evzio during the period between on or around September 1, 2016 and on or around March 29, 2019. Evzio was significantly more expensive than other prescription naloxone products with which it competed, such as Narcan. Whereas Evzio's list price was $4,100 for a pack of two auto-injectors, the competing Narcan nasal spray generally was available for roughly $150 per two-pack, and generic naloxone was available for less than $12 per dose. Pharmacies that dispensed Evzio could earn significant profit margins on Evzio—typically about $400 per Evzio pack.

OHM knew that, because of its high price point and the prevalence of lower-cost alternatives, many Medicare Part D plans would not authorize payment for Evzio without a prior authorization. Prior authorization was a process which required the patient's medical provider to submit additional clinical information justifying the prescription before insurers would agree to pay. Prior authorization forms commonly ask providers whether a patient to whom a drug has been prescribed is intolerant to (or already has tried but failed on) a less costly alternative therapy. Ordinarily, a physician or the physician's office completes a prior authorization request and sends it to the insurer with the physician's signature.

OHM understood that the prior authorization process could be time consuming and entail multiple rounds of communication before the insurer rendered a final coverage decision. To facilitate this process and ostensibly to reduce the burden on physicians (and thereby to encourage physicians to send Evzio prescriptions to OHM), OHM employed several individuals who worked as prior authorization specialists ("PA Specialists"). Among other duties, PA Specialists worked on completing and submitting prior authorization requests for drugs that OHM dispensed.

To obtain insurance approval for as many Evzio prescriptions as possible, these PA Specialists improperly completed Evzio prior authorization forms in place of the prescribing physicians, including instances in which OHM staff signed the prior authorization forms without the physician's authorization. OHM then submitted the forms to insurers—including to Medicare Part D plans—as if OHM were the physician. Because OHM staff understood that insurers would not accept prior authorizations from pharmacies, OHM took steps to obscure its own involvement. For example, on dozens of Evzio prior authorization request forms, OHM staff listed OHM's fax number in a field that requested the prescribing physician's fax number and listed the name of an OHM employee in a field on the prior authorization forms that called for the prescribing physician's office contact. OHM did so to ensure that insurers would contact OHM—and not the listed prescribing physician—when communicating about the prior authorization request.

In addition to purporting to be the physician's office, OHM submitted Evzio prior authorization requests to insurers that contained false clinical information. For example, OHM staff filled out and submitted dozens of Evzio prior authorization request forms that falsely asserted that patients had previously tried and failed both Narcan and naloxone. Furthermore, OHM staff falsely stated on Evzio prior authorization request forms that patients had shaky hands or nasal problems. All of this was done to secure approval of the prior authorization and payment for the more expensive drug, Evzio.

OHM understood that, had the insurers known that the forms contained false information, they would not have authorized and paid for the prescriptions. As a result of OHM's deliberate actions, insurers, including Medicare Part D plans, approved dozens of false prior authorization requests for Evzio that OHM submitted. These false claims resulted in OHM receiving approximately $82,000 in fraudulently obtained profit from Medicare.